JAMES E. GAFFNEY, administrator, *vs.* BAY STATE STREET
RAILWAY COMPANY.

Plymouth.    March 23, 1915. — June 22, 1915.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Practice, Civil,* Exceptions.    *Negligence,* Causing death.

At the argument of exceptions alleged by the defendant in an action of tort after
a verdict for the plaintiff, where the question is whether there was any evidence
on which the jury could find for the plaintiff on the issues of fact on which
the rights of the parties depend, it is out of place for the counsel for the de-
fendant in his argument to compare the number of witnesses who testified in
favor of the defendant and the character of the testimony given by them with
the number who testified for the plaintiff and the character of their testimony.

At the trial of an action against a street railway company by an administrator
for the benefit of the next of kin of his intestate to recover the penalty im-
posed by St. 1906 c. 463, Part I, § 63, as amended by St. 1907, c. 392, § 1,
for negligently causing the death of the intestate (before the enactment of St.
1914, c. 553) when he was in the exercise of due care and was not a passenger
or in the employ of the defendant, where it appears that the intestate by the
invitation of the owner of a tip cart was sitting with such owner and another
guest on a board placed as a seat across the tip cart, which was being driven
by the owner who had driven horses for fifty years, that just before the cart
came to a corner of two streets where there was a single track of the defendant
the intestate looked through a gap behind the building on the corner in the
direction from which came the car that killed him, and that before the cart
could be driven clear of the track it was struck by the defendant's car, which
was from seven to twelve minutes late and was going at the rate of twenty miles
an hour without sounding any gong or whistle, and the intestate was killed,
it was *held,* that there was evidence for the jury that the intestate was actively
looking out for his personal safety and thus was in the exercise of due care
within the meaning of the statute.

TORT by the administrator of the estate of Frank H. Gaffney,
late of Whitman, under St. 1906, c. 463, Part I, § 63, as amended
by St. 1907, c. 392, § 1, to recover for the benefit of the minor
children of the intestate, who were his next of kin, the penalty
imposed by that statute for negligently causing the death of the
intestate on October 25, 1913, when he was in the exercise of due
care and was not a passenger or in the employ of the defendant.
Writ dated December 8, 1913.

In the Superior Court the case was tried before *Morton,* J.    The

facts which could have been found in favor of the plaintiff upon the evidence are stated in the opinion. At the close of the evidence the defendant asked the judge to make the following rulings:

"1. Upon all the evidence the plaintiff is not entitled to recover.

"2. There is no evidence that the plaintiff's intestate was in the exercise of due care, and your verdict must be for the defendant.

"3. There is no evidence of negligence on the part of the defendant, and the plaintiff is not entitled to recover.

"4. The fact, if it be a fact, that the plaintiff's intestate, somewhere on Bedford street, between Wheeler's house and Musick's store, turned his head to the right toward Whitman and looked in that direction is no evidence that he was looking for a car, and constitutes no evidence of due care on his part.

"5. Upon all the evidence in this case, if you find that, while on Bedford street between Wheeler's house and Musick's store, the plaintiff's intestate turned his head to the right toward Whitman and looked in that direction, it is mere conjecture that he was looking for a car, and is no evidence of due care on his part with respect to this accident."

The judge refused to make any of these rulings and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $4,992.12. The defendant alleged exceptions.

The case was submitted on briefs.

*Asa P. French,* for the defendant.

*J. J. Geogan & F. J. Geogan,* for the plaintiff.

LORING, J. The jury were warranted in finding the following to be the facts in the case. The plaintiff's intestate was returning from work (on the invitation of one Poole) in a tip cart belonging to Poole. Poole, one Keating and the intestate were seated on the tail board laid across the cart as a temporary seat, in the order named, Poole being seated on the nigh side. One McCraith was standing behind the intestate with his hand upon his shoulder. The accident happened some thirty-five minutes after the sun had set, rain was falling, and it was foggy at the time. Poole, the owner of the cart, had driven horses for some fifty years and was driving at the time. The cart was being driven north on Bedford Street in the town of Whitman. Bedford Street crosses Temple Street at right angles, and on the southerly side of Temple Street

was a single track belonging to the defendant. As the tip cart came out of Bedford Street the horse was going at a walk and was "just stepping across the southerly rail of the car track" when a double truck car of the defendant came upon them, going west at the rate of twenty miles an hour. The arc light was not on, and no gong or whistle was sounded. "The horse stamped her forelegs down upon the track. McCraith said there was a car coming, and then she took a second step and took the north rail." Poole "slashed the horse for all I [he] was worth and spurred her on," but the car struck "the hub of the wheel and the rim of the wheel," and the intestate was killed. The car was from seven to twelve minutes later than the usual time at which it passed the crossing of these two streets. There was a building ("Musick's store") on the southeast corner. From the front line of the store to the southerly rail it was twenty and one half feet, and from the axle of the cart to the nose of the horse, just short of twelve feet.

The defendant asked for five rulings which the judge refused to make.

In his argument the learned counsel for the defendant has compared the number of witnesses who testified in favor of the defendant, and the character of the testimony given by them, with the number who testified for the plaintiff and the character of their testimony. Such an argument is proper on a hearing to set aside a verdict. But it is out of place where (as here) the question is whether there was any evidence on which the jury could find for the plaintiff on the several issues of fact on which the rights of the parties depend. He has also argued (largely basing this argument upon that to which we have just adverted) that there was no evidence warranting a finding that the arc light was not lighted and that neither the gong nor the whistle was sounded. But we are of opinion that there was.

On the facts stated above there can be no question of the jury being warranted in finding negligence on the part of those in charge of the defendant's car.

This is an action for a penalty imposed for negligently causing the death of the plaintiff's intestate. In such a case the allegation that the intestate was in the exercise of due care or "due care and diligence" (to quote the words originally used) have the

meaning that these words had in an indictment for negligently causing death. *Hudson* v. *Lynn & Boston Railroad*, 185 Mass. 510. *Bothwell* v. *Boston Elevated Railway*, 215 Mass. 467. *McCue* v. *Boston Elevated Railway, ante,* 432. Those words in an indictment do not have the meaning that they have when it is alleged in a common law action of tort that the plaintiff was in the exercise of due care. In a common law action of tort they mean that the plaintiff's negligence did not contribute to the injury complained of. In an indictment and in an action of tort to recover a penalty for negligently causing death they mean that the deceased was actively looking out for his personal safety. In the case at bar it was enough to prove that allegation that the plaintiff's intestate was riding as an invitee in a tip cart driven by a man who had driven horses for fifty years. In addition it appeared that just before the cart came to Musick's store on the corner of the two streets the intestate looked through a gap behind the store, in the direction from which the car which killed him came. It is true that at the rate this car was going it would have gone by the crossing where the accident occurred if it had been in sight when the intestate looked. But this was or could have been found by the jury to have been evidence that the intestate was actively looking out for his personal safety and so was in the exercise of due care within the meaning of those words in St. 1906 c. 463, Part I, § 63, as amended by St. 1907, c. 392, § 1.

St. 1914, c. 553, does not apply to this case.

The result is that all the rulings asked for by the defendant were properly refused, and the exceptions must be overruled. It is

*So ordered.*